LAW OFFICE OF
**PETER A. ROMERO**

Peter A. Romero
promero@romerolawny.com

David D. Barnhorn
dbarnhorn@romerolawny.com

June 17, 2022

**VIA ECF**
Hon. Gary R. Brown
United States District Judge
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

     Re: *Roxana Lemus v. El Rancho Catracho Rest. Inc., et al.*
        Docket No.: 21-cv-04889 (GRB) (ST)

Dear Judge Brown:

  This firm represents Plaintiffs Roxana Lemus, Michelle Varela, Margarita Sanchez, Daisy Sanchez and Heidi Castro Giron, in the above referenced action against Defendants El Rancho Catracho Rest. Inc. d/b/a El Rancho Catracho Restaurant, Nacis Santos and Lidia Espinal,[1] their former employers. Plaintiffs bring claims for unpaid overtime wages under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), unpaid minimum wages under the FLSA and NYLL, unpaid spread of hours compensation under the NYLL, unlawfully retained tips and gratuities under NYLL § 196-d, for failure to issue timely payment of wages pursuant to NYLL § 191, for failure to furnish accurate – or any – wage statements for each pay period under NYLL § 195(3), and for failure to provide a wage notice upon their hire under NYLL § 195(1). D.E. 1. The parties have reached a resolution of this action. Accordingly, Plaintiffs now submit this motion for approval, pursuant to Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015), to respectfully request that the Court approve the terms of the parties' settlement agreement with respect to Plaintiffs' FLSA claims.[2] The parties' proposed Settlement Agreement and Release (the "Agreement") is attached as Exhibit A.

**Procedural History**

  On August 30, 2021, Plaintiffs filed their Complaint. D.E. 1. On December 1, 2021, Defendants filed their Answer to the Complaint. D.E. 10. On January 19, 2022, the Court conducted an initial conference and referred this matter to EDNY mediation. D.E. 13. After exchanging relevant discovery, EDNY Mediator Barry Peek, Esq. conducted a mediation with the parties on April 8, 2022, which was successful. As a result of Mediator Peek's assistance,

---

[1] Since filing this lawsuit, Plaintiff has learned that Defendants ABC Corp. 1-3 d/b/a d/b/a El Rancho Catracho Restaurant and Francisco Santos are incorrectly named and, therefore, are not participating in this litigation.

[2] The parties do not seek the Court's approval with respect to the settlement of Plaintiffs' non-FLSA claims as there is no requirement for the Court to do so. However, although non-FLSA claims do not require the Court's approval, the parties' settlement agreement, attached as Exhibit A, includes the resolution of all of Plaintiffs' claims asserted in this lawsuit.

the parties reached a settlement in principle following these contentious, arms'-length negotiations. Thereafter, the parties negotiated the terms of their formal settlement agreement.

The settlement agreement between the Plaintiffs and the Defendants provides for payment of a gross sum of $150,000.00, inclusive of attorneys' fees and costs. Pursuant to the Agreement, Plaintiffs will receive a total of $99,532.00 – consisting of Plaintiffs receiving settlement amounts proportionally based on their respective damages under both the FLSA and NYLL, providing $22,328.24 for Roxana Lemus, $19,613.68 for Michelle Varela, $23,887.39 for Margarita Sanchez, $18,556.76 for Daisy Sanchez, and $15,145.93 for Heidi Castro Giron, and Plaintiff's counsel will receive a total sum of $50,468.00, consisting of $49,766.00 for attorneys' fees (i.e. 1/3 of the net settlement amount after deducting costs from the gross settlement amount) and $702.00 for litigation costs.

**The Court Should Approve the Settlement Agreement as Fair and Reasonable**

FLSA claims may be dismissed with prejudice under Fed. R. Civ. P. 41 if they are approved by the Court. Cheeks, 796 F.3d at 206-207. "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." Hernandez v. Merrill Lynch & Co., 2013 WL 1209563, at *7 (S.D.N.Y. Mar. 21, 2013) (citations omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." Id. (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." Id.

In evaluating a proposed settlement of FLSA claims, courts in this Circuit typically apply the five-factor test articulated in Wolinsky v. Scholastic, Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). The Wolinsky factors require consideration of the following factors: (1) the Plaintiffs' range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arms'-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. Id.

In this case, Defendants – a corporation and its owners – operate a restaurant serving traditional Honduran fare, located at 131 Jackson Street, Hempstead, New York 11550. Plaintiffs contend that they worked in variety of positions, often performing multiple duties, including working as a server, busser, bartender, taking customer phone orders, cleaning tables, hostess, dishwasher, or performing duties as kitchen staff. Plaintiffs allege that they worked more than forty hours per workweek during many workweeks. Plaintiffs also assert that they were paid hourly tipped rates or hourly straight-time rates (depending on which positions they were working at a given time) and were paid those same straight-time, regular rates of pay for all hours worked, including those hours in excess of forty in a single workweek. For certain Plaintiffs, they allege that their hourly tipped rate of pay was below the FLSA minimum wage. Plaintiffs also contend that Defendants did not provide the mandated verbal or written tip credit notices pursuant to the FLSA or NYLL. As a result, despite working in excess of forty hours in a workweek, Plaintiffs allege that Defendants failed to pay them at their proper, statutorily mandated overtime rate of pay of one and one-

half times their applicable regular rate of pay for certain hours worked in excess of forty hours each workweek and did not pay at least the minimum wage rate in violation of the FLSA.

Critically, the parties have several key disputes that impact liability and damages. Defendants contend that Plaintiffs were paid correctly for their hours worked. Defendants also deny that they failed to provide an appropriate tip credit notice for purposes of the FLSA and NYLL. As Plaintiffs' FLSA minimum wage claims rely on Defendants' alleged failure to provide a proper tip credit notice, their FLSA minimum wage claims would be defeated if Defendants' assertion is credited by a jury. Defendants also strenuously contest the number of hours worked by Plaintiffs each week, asserting that Plaintiffs worked fewer hours each week than alleged. If Defendants' contentions regarding their hours worked were credited by a jury, Plaintiffs' damages would be substantially reduced. Defendants provided various time and payroll records in this action, which would need to be weighed be a trier of fact. Each of these disputes will turn primarily on the credibility of the parties and the resolution of these disputes would have a significant outcome on Plaintiffs' damages at trial. Additionally, Defendants contend that Plaintiffs are not entitled to liquidated damages, whereas Plaintiffs assert that liquidated damages should be awarded because Defendants cannot establish that the alleged violations, if proven, were part of good faith efforts to comply with the FLSA. Critically, and central to the resolution of this action, Defendants assert that they have limited financial resources and are unable to sustain a larger settlement or judgment. Because of this, Plaintiffs face the risk that they could end up collecting little or even no monetary recovery, even if successful at trial.

Plaintiffs calculated their damages in order to assess their best possible recovery in this litigation. Making all reasonable assumptions in their favor, according to Plaintiffs' calculations, Plaintiff Lemus' best potential recoveries under the FLSA at trial amount to $12,702.43 for unpaid FLSA wages and $12,702.43 for FLSA liquidated damages, Plaintiff Varela's best potential recoveries under the FLSA at trial amount to $11,983.16 for unpaid FLSA wages and $11,983.16 for FLSA liquidated damages, Plaintiff Margarita Sanchez's best potential recoveries under the FLSA at trial amount to $14,771.48 for unpaid FLSA wages and $14,771.48 for FLSA liquidated damages, Plaintiff Daisy Sanchez's best potential recoveries under the FLSA at trial amount to $10,777.38 for unpaid FLSA wages and $10,777.38 for FLSA liquidated damages, and Plaintiff Castro's best potential recoveries under the FLSA at trial amount to $9,797.98 for unpaid FLSA wages and $9,797.98 for FLSA liquidated damages.

Settling at this stage allows the parties to avoid substantial costs and delays. Indeed, were a settlement not reached at this stage, the parties would have engaged in formal written and document discovery, and depositions of Plaintiffs, Defendants, and likely several non-party witnesses. This settlement also avoids potential motions for summary judgment and a time consuming and risky trial, which could result in a months' or years' long delay to obtaining a potential recovery for the Plaintiffs, even if they are successful, and avoids potentially facing future appeals. Notably, a trial in this lawsuit is particularly risky because it will likely turn substantially upon the credibility of the parties. As a result, all parties face a serious risk of losing at trial, in whole or in part. Even if Plaintiffs were successful on their FLSA wage claims, but Defendants could prove that they made a good faith effort to comply with the FLSA, Plaintiffs would not be entitled to liquidated damages under the FLSA, reducing Plaintiffs' available FLSA damages by half. If Defendants could establish that the

alleged violations were not willful, Plaintiffs' FLSA claims would be subject to a two-year statute of limitations, which would further reduce Plaintiff Lemus' damages to $4,394.25, Plaintiff Varela's damages to $4,802.23, Plaintiff Margarita Sanchez's damages to $4,603.25, Plaintiff Daisy Sanchez's damages to $3,807.38, and Plaintiff Castro's damages to $3,338.73. Thus, by settling at this stage, Plaintiffs ensure that they will receive a substantial recovery in this matter. Additionally, even if Plaintiffs were successful at trial, there is the risk that Plaintiffs would be able to collect only a portion of the judgment or possibly be unable to collect any recovery under the judgment due to Defendants' limited financial resources.

Accordingly, although there is a possibility that Plaintiffs could recover higher damages if the case proceeded to trial, there is also the significant possibility that they could receive lower damages, or nothing at all, and as such, the risks and uncertainties discussed above are substantial. Thus, assuming this settlement is approved, Plaintiffs will be able to recover the settlement funds more expeditiously, and with more certainty, than a trial judgment.

Furthermore, the settlement agreement does not contain any terms that would militate against the Court approving it. For instance, the release in the Agreement is limited to wage-related claims. The release does not fall into the category of releases that are so broad and encompassing as to be rejected because they run afoul of standards of fairness and reasonableness. See Flood v. Carlson Rests. Inc., 2015 WL 4111668, at *1-2 (S.D.N.Y. July 6, 2015); Lopez v. Nights of Cabiria, LLC, 96 F. Supp. 3d 170, 181 (S.D.N.Y. March 30, 2015) (prohibiting releases that "purport to waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues" but notes additional claims may be released in appropriate circumstances); Cheeks, 796 F.3d at 206 (noting judicial approval of settlements is necessary to avoid an "overbroad release" that waives all possible claims and to prevent potential abuse or overreach in settlements). Here, the release is narrowly tailored to release only claims relevant to the instant action. Likewise, the agreement does not contain a confidentiality clause that may "run afoul of the purposes of the FLSA and the public's independent interest in assuring that employees' wages are fair." Flood, 2015 WL 4111668, at *1 (citing Lopez, 96 F. Supp. 3d at 177-181); Cheeks, 796 F.3d at 206 (quoting Lopez, 96 F. Supp. 3d at 177) (noting judicial approval of settlements is necessary to prevent "'highly restrictive confidentiality provisions…in strong tension with the remedial purposes of the FLSA'"); Cortes v. New Creators, Inc., 2016 WL 3455383, at *4 (S.D.N.Y. June 20, 2016) (citing Lopez, 96 F. Supp. 3d at 177-181). Additionally, the parties have not included a non-disparagement clause.

Additionally, the reasonableness of this settlement is also assured by the involvement of a mediator. Indeed, the presence of a mediator "provides assurance that the settlement was not the product of collusion." Bilbao v. LCS Enters. Inc., 2018 WL 1399199, at *2 (S.D.N.Y. Mar. 19, 2018); see also Hernandez v. Anjost Corp., 2013 WL 4145952, at *2 (S.D.N.Y. Aug. 14, 2013) ("The assistance of an experienced mediator . . . reinforces that the Settlement Agreement is non-collusive."); Morris v. Affinity Health Plan, Inc., 859 F. Supp. 2d 611, 618-619 (S.D.N.Y. 2012) (citing In re Giant Interactive Grp., Inc. Sec. Litig., 279 F.R.D. 151, 159-160 (S.D.N.Y. 2011)) (explaining parties entitled to a presumption of fairness where mediator facilitated arms-length settlement). Here, the parties engaged in contentious negotiations requiring the assistance of a mediator to resolve this matter. Accordingly, the

settlement achieved clearly reflects an arms'-length negotiation absent from fraud or collusion and is a reasonable compromise over the contested issues in this matter.

### The Court Should Approve the Requested Attorneys' Fees and Costs as Reasonable

In addition to assessing the reasonableness of the settlement award, most courts since Cheeks have found that courts "must also assess the reasonableness of any attorneys' fee award." Velasquez v. SAFI-G, Inc., 137 F. Supp. 3d 582, 585 (S.D.N.Y. Oct. 7, 2015) (citing Wolinsky, 900 F. Supp. 2d at 336). When courts examine attorneys' fee awards in FLSA settlements, it is "to ensure that the interest of plaintiffs' counsel in counsel's own compensation [did not] adversely affect the extent of the relief counsel [procured] for the clients." Lliguichuzhca v. Cinema 60, LLC, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013) (citing Wolinsky, 900 F. Supp. 2d at 336). In this case, the portion of the settlement amount attributable to attorneys' fees is $49,766.00, which is an amount equal to one-third of the net settlement amount after deducting for litigation costs.

Notably, while Courts may now award attorneys' fees in amounts greater than one-third of the total settlement sum, plus costs, Fisher v. SD Prot. Inc., 948 F.3d 593 (2d Cir. 2020), Courts have traditionally held that approval of attorneys' fees of 1/3 of the settlement sum, plus costs, is reasonable and routinely approve such terms in settlement agreements. Tiro v. Public House Investments, LLC, 2013 WL 4830949, at *14 (S.D.N.Y. Sept. 10, 2013) (collecting cases); Kochilas v. Nat'l Merchant Servs., Inc., 2015 WL 5821631, at *8 (E.D.N.Y. Oct. 2, 2015) (collecting cases); McDaniel v. City of Schenectady, 595 F.3d 411, 417 (2d Cir. 2010) (noting that the percentage of recovery method is "the trend in this Circuit."); see also Oxley v. Excellent Home Care Servs., LLC, 2020 WL 589581, at *3 (E.D.N.Y. Jan. 8, 2020), report and recommendation adopted, 2020 WL 401772 (E.D.N.Y. Jan. 23, 2020) (citing Romero v. Westbury Jeep Chrysler Dodge, Inc., 2016 WL 1369389, at *2 (E.D.N.Y. Apr. 6, 2016)) (noting "courts in this Circuit have routinely found an award representing one third of the settlement amount to be reasonable" in FLSA settlements and awarding plaintiff's counsel a fee of 1/3 of the net settlement after costs, plus an award of costs); Yong Yuan Wang v. Mandarin Glen Cove, Inc., 2019 WL 5695910, at *2-3 (E.D.N.Y. Sept. 30, 2019) (citing Romero, 2016 WL 1369389, at *2) (same); Meza v. 317 Amsterdam Corp., 2015 WL 9161791, at *2 (S.D.N.Y. Dec 14, 2015) ("[C]ourts regularly approve attorney's fees of one-third of the settlement amount in FLSA cases.") (collecting cases); Cregg v. Firstservice Residential N.Y., Inc., Docket No. 15-cv-3876-LB, D.E. 14 at *4-5 (E.D.N.Y. Dec. 9, 2015) (approving one-third attorneys' fees award as "the norm in this Circuit"); Najera v. Royal Bedding Co., LLC, 2015 WL 3540719, at *3 (E.D.N.Y. June 3, 2015) (collecting cases); Calle v. Elite Specialty Coatings Plus, Inc., 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014) ("[O]ne-third contingency fee is a commonly accepted fee in this Circuit."); Rangel v. 639 Grand St. Meat & Produce Corp., 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013) (observing that in FLSA cases, district courts in the Second Circuit routinely approve of fees that amount to one-third of the total recovery, plus costs). Courts have held that a one-third recovery is appropriate in a case where, as here, Plaintiffs' counsel's fee entitlement is entirely contingent upon success of a settlement or award. See Massiah v. MetroPlus Health Plan, Inc., 2012 WL 5874655, at *8 (S.D.N.Y. Nov. 20, 2012) (collecting cases) (one-third recovery is "presumptively reasonable" where "Counsel's fee entitlement is entirely contingent upon success"). Thus, Plaintiffs' counsel's requested fees of one-third of the net settlement sum after deducting for litigation costs is certainly reasonable.

Here, Plaintiffs' counsel investigated the Plaintiffs' claims, conducted a detailed inquiry regarding Plaintiffs' job duties, hours worked and compensation received, and Defendants' compensation policies, exchanged relevant discovery, created an assessment of Plaintiffs' damages, attended mediation, and negotiated the parties' formal settlement agreement. Due to the contingent nature of the case, Plaintiffs' counsel undertook these efforts with no ultimate guarantee of compensation. Plaintiffs' counsel was zealous in the pursuit of Plaintiffs' litigation objectives and secured a favorable result on the Plaintiffs' behalf. The settlement will be made available to the Plaintiffs without the uncertainty and delay of trial.

Lastly, Plaintiff's counsel seeks reimbursement for $702.00 in advanced litigation costs, representing $402.00 for the filing fee for the Complaint and $300.00 for the EDNY mediator's fee.

Accordingly, Plaintiffs' counsels' requests for attorneys' fees in the amount of $49,766.00 and expenses in the amount of $702.00 should be approved as reasonable.

In light of the foregoing, the parties respectfully request that the Court approve the parties' settlement and dismiss this matter with prejudice, while retaining jurisdiction over matter to enforce the terms of this settlement.

We thank the Court for its consideration of these requests.

Respectfully submitted,

*David Barnhorn*

_____
DAVID D. BARNHORN, ESQ.

C:   All Counsel of Record *via* ECF